**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

ELLEN B.,                                   )
                                            )
          Plaintiff,                        )          No. 19 cv 2389
                                            )
               v.                           )          Magistrate Judge Susan E. Cox
                                            )
ANDREW M. SAUL, Commissioner of the         )
Social Security Administration,[1]          )
                                            )
          Defendant.                        )

## MEMORANDUM OPINION AND ORDER

Plaintiff Ellen B.[2] appeals the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her disability benefits. Plaintiff has filed a motion for summary judgment [dkt. 11]; the Commissioner has filed a cross-motion for summary judgment [dkt. 19]. As detailed below, Plaintiff's motion for summary judgment [dkt. 11] is DENIED and the Commissioner's motion for summary judgment [dkt. 19] is GRANTED.

**I.     Background**

     **a.     Procedural History**

Plaintiff protectively applied for Disability Insurance Benefits on May 18, 2016, alleging a disability onset date of May 9, 2016. [Administrative Record ("R.") 187-88]. Plaintiff's claim was denied initially and again upon reconsideration. [R. 72.] Following these denials, Plaintiff appeared at an April 11, 2018 Administrative Hearing before Administrative Law Judge ("ALJ") Lana Johnson [R. 12-35.] On July 3, 2018, ALJ Johnson issued an unfavorable decision. [R 72-88.] Plaintiff requested and was denied Appeals Council review [R. 1-4], thus making the decision of the Appeals Council the

---

[1]   As of June 4, 2019, Andrew M. Saul is the Commissioner of the Social Security Administration. Pursuant to Federal Rule Civil Procedure 25(d), he is hereby substituted as Defendant.

[2]   In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by her first name and the first initial of her last name(s).

final decision of the Commissioner. Plaintiff filed the instant action on April 9, 2019, seeking review of the Commissioner's decision. [Dkt. 1.]

### b. Relevant Background

Plaintiff was born in 1966 and was 50 years old on her alleged disability onset date. [R. 187.] Plaintiff has a high school education. [R. 15.] For 33 years, she worked in counter sales for auto repair and parts stores. [R. 17.]

Plaintiff sought treatment for moderate, continuous neck pain with intermittent worsening several months prior to her alleged onset date of May 9, 2016. [R. 339, 352.] In September 2015, an MRI of her cervical spine revealed mild spondylosis. [R. 358.] In December 2015, in addition to neck pain, Plaintiff also experienced joint pain and achiness. [R. 426.] The etiology of Plaintiff's pain was unknown, but she had seen a rheumatologist, and was prescribed Gabapentin. *Id.* She had been given trigger point injections, but reported that they had only helped for about an hour. *Id.* In early May 2016, Plaintiff's treating primary care physician, Dr. Sharon Spak-Schreiner, prescribed Gabapentin and Cymbalta to treat Plaintiff's pain, discussed the possibility that Plaintiff's symptoms were the result of fibromyalgia, and referred her to rheumatology. [R. 471.] In October 2016, Plaintiff returned to Dr. Spak-Schreiner experiencing an exacerbation of fibromyalgia; Dr. Spak-Schreiner recommended increasing Plaintiff's dosage of Gabapentin, despite the fact Plaintiff "has medication at home, had not been taking regularly." [R. 790.] Ultimately, after evaluation by an orthopedist and a rheumatologist in consultation with Dr. Spak-Schreiner, Plaintiff was diagnosed with fibromyalgia. [R. 807.]

In January 2017, because Plaintiff continued to variously report pain, weakness, and fatigue at points such as her thumbs, ankles, shoulder, upper back, and neck, Dr. Spak-Schreiner again referred Plaintiff to a rheumatologist for evaluation and treatment. [R. 824, 831, 834.] In late February 2017, Plaintiff again saw Dr. Spak-Schreiner with reports of back pain. [R. 859, 865.] She reported that her

rheumatologist recently changed her medication. [R. 865.[3]] Dr. Spak-Schreiner referred Plaintiff to a chiropractor for her back pain, encouraged her to try the new medication prescribed by her rheumatologist, and advised to drink tonic water to help with muscle cramping. [R. 859, 865, 868.] Plaintiff continued to make many of the same complaints to Dr. Spak-Schreiner throughout 2017. [R. 875, 878-88, 894, 897, 902, 992, 995.] In August 2017, Plaintiff reported to Dr. Spak-Schreiner that her rheumatologist had referred her to a pain management specialist for treatment of her fibromyalgia symptoms. [R. 992.] At that visit, Dr. Spak-Schreiner recommended stretching exercises and suggested Plaintiff avoid heavy lifting or sudden movement, and prescribed bilateral wrist/hand splints. [R. 995.] In October 2017, Dr. Spak-Schreiner again referred Plaintiff to a rheumatologist for another opinion and treatment options for her fibromyalgia, and noted that Plaintiff "doesn't want to try [] medication at this time, since nothing has helped in the past." [R. 1010, 1025.] In January 2018, Plaintiff reported that her rheumatologist recommended physical therapy and that she continue taking pain medication. [R. 1108.]

Plaintiff has also been treated for many years for depressive disorder and anxiety disorder. [R. 334, 1123.] In 2014 and 2015, Plaintiff received mental health treatment from Dr. Jerry Gibbons, a psychiatrist. [R. 333-35.] Since 2014, Plaintiff has received individual psychotherapy from Vicki Custer, a licensed Clinical Professional Counselor. [R. 1123-1126.]

Plaintiff saw Ms. Custer a handful of times each year from 2014 through 2018. [R. 1123-26.] When Plaintiff initially presented to Ms. Custer in 2014, Plaintiff exhibited symptoms of clinical depression and generalized anxiety disorder that included insomnia, crying, racing thoughts, worry, and an inability to engage in activities she used to enjoy; there were notations of suicidal ideation, "brain fog," and reports of problems at work with supervisors and coworkers. [R. 1124, 1125.] Plaintiff

---

[3]    It appears that all references to Plaintiff's rheumatologist are from Dr. Spak-Schreiner's records; there do not appear to be any rheumatology records within Plaintiff's Administrative Record. Thus, the Court is left with Plaintiff's second-hand reports to Dr. Spak-Schreiner concerning her rheumatology visits.

related to Ms. Custer that medications were not helping with her depression and anxiety. [R. 1125.] On October 26, 2015, Plaintiff voluntarily, on Ms. Custer's recommendation, entered a seven-week intensive outpatient program at Alexian Brothers Behavioral Health Hospital, due to depression and anxiety, suicidal ideation, work stress, and grief-related issues.[4] [R. 371-72.] In April 2016, Ms. Custer noted that Plaintiff was having difficulties with coworkers and supervisors, due both to anxiety and to her perception they did not understand her physical limitations. *Id.* The following month (the date in May 2016 is not specified by Ms. Custer's notes), Plaintiff experienced a panic attack at work and left abruptly; she related to Ms. Custer that there was a mutual agreement with her manager that she would not return. [R. 1125.] That was the end of her employment. *Id.* However, on May 4, 2016, Plaintiff related to Dr. Spak-Schreiner that she was "currently looking for a different job to try to minimize lifting/standing." [R.471, 1125.] On March 7, 2018, Ms. Custer drafted an "Evaluation of Ellen B[]" for Plaintiff's counsel. In that letter, Ms. Custer opined that Plaintiff's chronic pain prevented her from standing or sitting for long periods, Plaintiff had trouble using her hands due to joint pain, and insomnia resulted in an inability to get six hours of restful sleep. [R. 83, 1123.] Ms. Custer opined that "[d]ue to her ongoing physical and mental limitations, [Plaintiff] displayed that she no longer was able to keep up with a busy demanding workload." *Id.*

In September 2016, Plaintiff underwent a psychiatric consultative examination. [R. 487-490.] The examiner noted Plaintiff's hygiene and grooming were "adequate" and her mood was euthymic.[5] *Id.* The examiner diagnosed Plaintiff with depressive disorder, anxiety disorder, and fibromyalgia. *Id.*

---

[4]    The Alexian Brothers records indicate that Plaintiff "reports she was assessed on 9/30/15 and was referred to the PHP program but did not start right away…" but also indicate Plaintiff was discharged on 10/26/2015 from the "Adult IOP" program. [R. 371-72.] Therefore, it is somewhat unclear whether Plaintiff was admitted into the PHP (partial hospitalization program) or the IOP (intensive outpatient program) at Alexian Brothers, but the Court defers to the plain language of the documents, which indicate Plaintiff was ultimately admitted to the intensive outpatient program from which she was discharged.

[5]    Euthymia is defined as "joyfulness; mental peace and tranquility; moderation of mood, not manic or depressed." *Stedman's Medical Dictionary*, euthymia, 307600 (Nov. 2014).

    **c.**      **The ALJ's Decision**

On July 3, 2018, the ALJ issued a written decision denying Plaintiff disability benefits. [R. 72-88.] At Step One, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date of May 9, 2016 through her date last insured. [R. 72.] At Step Two, the ALJ found that Plaintiff had the severe impairments of generalized anxiety disorder, major depressive disorder, degenerative disc disease in the cervical spine, fibromyalgia, and osteoarthritis in the left thumb. [R. 75.] At Step Three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments of 20 C.F.R. Part 404, Subpart P, App'x 1. [R. 75-77.] Before Step Four, the ALJ found that Plaintiff had the residual functional capacity ("RFC")[6] to perform light work with the following limitations: she can never climb ladders, ropes or scaffolds; she can occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl; she can frequently reach overhead and handle bilaterally; she can have occasional exposure to unprotected heights, dangerous heavy moving machinery, and vibration; she can understand, remember and carryout simple routine tasks; she is limited to simple work related decisions; she can have frequent interaction with supervisors, coworkers, and the general public. [R. 77.] At Steps Four and Five, the ALJ found Plaintiff incapable of performing her past relevant work, but capable of performing several other jobs existing in significant numbers in the national economy. [R. 85-87.] Because of these determinations, the ALJ found Plaintiff not disabled under the Act. [R. 87.]

## II.   Social Security Regulations and Standard of Review

The Social Security Act requires all applicants to prove they are disabled as of their date last insured to be eligible for disability insurance benefits. ALJs are required to follow a sequential five-step test to assess whether a claimant is legally disabled. The ALJ must determine: (1) whether the

---

6    RFC is defined as the most one can do despite one's impairments. 20 C.F.R. §§ 404.1545, 416.945.

claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; and (3) whether the severe impairment (or, in this case, the combination of impairments) meets or equals one considered conclusively disabling such that the claimant is impeded from performing basic work-related activities. 20 C.F.R. § 404.1520; 20 C.F.R. § 404.1523; 20 C.F.R. § 404.1545; 20 C.F.R. § 416.920(a)(4)(i)-(v). While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim. S.S.R. 96-8p, 1996 WL 374184, *5 (July 2, 1996). If the impairment(s) does meet or equal this standard, the inquiry is over and the claimant is disabled. 20 C.F.R. § 416.920(a)(4). If not, the evaluation continues and the ALJ must determine (4) whether the claimant is capable of performing his past relevant work. *Cannon v. Harris*, 651 F.2d 513, 517 (7th Cir. 1981). If not, the ALJ must (5) consider the claimant's age, education, and prior work experience and evaluate whether she is able to engage in another type of work existing in a significant number of jobs in the national economy. *Id.* At the fourth and fifth steps of the inquiry, the ALJ is required to evaluate the claimant's RFC in calculating which work-related activities she is capable of performing given his limitations. *Young v. Barnhart*, 362 F.3d 995, 1000 (7th Cir. 2004). In the final step, the burden shifts to the Commissioner to show that there are jobs that the claimant is able to perform, in which case a finding of not disabled is due. *Smith v. Schweiker*, 735 F.2d 267, 270 (7th Cir. 1984).

In disability insurance benefits cases, a court's scope of review is limited to deciding whether the final decision of the Commissioner of Social Security is based upon substantial evidence and the proper legal criteria. *Scheck v. Barnhart*, 357 F.3d 697, 699 (7th Cir. 2004). Substantial evidence exists when a "reasonable mind might accept [the evidence] as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001). While reviewing a commissioner's decision, the Court may not "reweigh evidence, resolve conflicts in the

6

record, decide questions of credibility, or substitute [its] own judgment for that of the Commissioner." *Young*, 362 F.3d at 1001. Although the Court reviews the ALJ's decision deferentially, the ALJ must nevertheless "build an accurate and logical bridge" between the evidence and his conclusion. *Steele v. Barnhart*, 290 F.3d 936, 941 (7th Cir. 2002) (internal citation omitted). The Court cannot let the Commissioner's decision stand if the decision lacks sufficient evidentiary support, an adequate discussion of the issues, or is undermined by legal error. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003); *see also*, 42 U.S.C.§ 405(g).

### III. Discussion

Plaintiff contends there are several problems with the ALJ's opinion: (1) the ALJ allegedly improperly addressed Plaintiff's fibromyalgia; (2) the ALJ's evaluation of Plaintiff's subjective symptoms was allegedly flawed; (3) the ALJ's residual functional capacity finding was allegedly unsupported by substantial evidence; and (4) the ALJ allegedly erred in addressing the medical opinions of two of Plaintiff's treaters: Ms. Custer and Dr. Spak-Schreiner. The Court disagrees with each of these contentions, and addresses each in turn.

#### a.   Plaintiff's Fibromyalgia

Plaintiff argues that it was an error for the ALJ to fail to mention Plaintiff's fibromyalgia as part of her Step Three analysis, which "foreshadowed her dismissive stance toward that impairment when assessing [Plaintiff's] RFC." [Dkt. 23, p. 3.] In fact, as Plaintiff specifically disclaims the arguments that the ALJ failed to articulate why her fibromyalgia equaled, and that the ALJ failed to find a listing equivalence [dkt. 23, p. 2], her sole Step Three argument appears to be that the ALJ needed to more robustly detail why her fibromyalgia failed to meet or medically equal a listed impairment.

At Step Three, an ALJ considers whether an impairment (in this case, Plaintiff's fibromyalgia), alone or in combination with other impairments, meets or medically equals a listed impairment. The

Listing of Impairments does not include fibromyalgia and, thus, Plaintiff's fibromyalgia could not meet a listed impairment. Therefore, the ALJ was to assess whether Plaintiff's fibromyalgia medically equaled a listed impairment. The ALJ's discussion of whether Plaintiff's condition met or medically equaled a listed impairment is governed by Social Security Ruling ("SSR") 17-2p. Under SSR 17-2p, if an ALJ concludes the evidence does not support a finding that a claimant's impairment medically equals a listed impairment, the ALJ "is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding." SSR 17-2p, 2017 WL 3928306 at *4 (Mar. 27, 2017).

Here, the ALJ did just that (indeed, on the same page of her opinion as she classifies Plaintiff's fibromyalgia as a severe impairment) when she noted that the record failed to establish that Plaintiff "had an impairment or combination of impairments that met or medically equaled the criteria of any listed impairment." [R. 75.] The ALJ also specifically noted that both the medical evidence of record and the medical opinions in this case supported the notion that no impairment or combination if impairments was severe enough to meet the criteria of a listed impairment. *Id.* Therefore, under the plain language of SSR 17-2p, the ALJ sufficiently articulated her conclusion that Plaintiff's impairments – including fibromyalgia – did not medically equal a listed impairment. She needn't have provided any more detailed articulation of her conclusions at Step Three; the Court declines to remand on this basis.

### b.   Subjective Symptom Evaluation

Plaintiff next claims the ALJ erred by failing to build a logical bridge between her conclusions and her assessment of whether Plaintiff's subjective complaints and symptoms were consistent with the medical evidence.

An ALJ's credibility determination is afforded "considerable deference" on review and may only

be overturned if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010); *Green v. Saul*, 781 F. App'x 522, 527 (7th Cir. July 23, 2019) (when ALJ's subjective symptoms assessment "was tied to evidence in the record and was not patently wrong," it could not be disturbed). While an ALJ may assess whether a plaintiff's alleged symptoms are consistent with the medical evidence, the ALJ may not simply reject a plaintiff's claims if the plaintiff seems untruthful. SSR 16-3p. However, an ALJ is only required to give reasons sufficient to provide a fair sense of how the ALJ assessed plaintiff's statements, and the court should affirm an ALJ's finding so long as he gave "specific reasons that are supported by the record." SSR 16-3p, 2017 WL 5180304; *Skarbek v. Barnhart*, 390 F.3d 500, 505 (7th Cir. 2004). Only when an ALJ's assessment "lacks *any* explanation or support…will [the court] declare it to be 'patently wrong.'" *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008) (citations omitted; emphasis added).

Although fibromyalgia is a mysterious disease in that its cause or causes are unknown, its symptoms are entirely subjective, doctors know little about how to treat it, and there is no cure. *Sarchet v. Chater*, 78 F.3d 305, 306 (7th Cir. 1996); *Allen v. Massanari*, 2002 WL 398510, at *9 (N.D. Ill. Mar. 14, 2002). "There are no objective medical tests that can confirm the existence of fibromyalgia." *Allen*, 2002 WL 398510, at *9. However, there are clinical signs that lead medical providers to a diagnosis of fibromyalgia. SSR 12-2p, 2012 WL 3104869, *2-4.

The Social Security Ruling describing how an ALJ should consider the effects of fibromyalgia specifically instructs the ALJ of the following:

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities; medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

*Id.* at *5.

While Plaintiff argues that the paucity of clinical evidence is an improper basis for the ALJ to

have discounted Plaintiff's subjective statements about the severity of her fibromyalgia [dkt. 11, p. 11], it is not the case that there was *no* evidence for the ALJ to have weighed against Plaintiff's subjective statements. Here, the ALJ summarized Plaintiff's testimony and statements to the agency, including, *inter alia*, that she could not lift more than five pounds, and could stand for only 15 minutes, sit for 30 minutes, and walk for 20 to 30 minutes at a time. [R. 78.] The ALJ then explained that she did not fully credit Plaintiff's subjective assertions did not support Plaintiff's allegations regarding the intensity, persistence, or limiting effects of her symptoms. *Id.* Specifically, throughout her decision, the ALJ noted the ways in which the objective medical evidence, conservative treatment, and Plaintiff's regular activities all undermined the severity of her allegations.

The ALJ noted Plaintiff alleged pain with movement, and occasionally exhibited decreased range of motion, but also noted that on many occasions, providers observed that, despite her complaints, Plaintiff had good functioning and signs of normal motor functioning. [R. 79-81.] For example, the ALJ noted that Plaintiff reported pain in her arm to Dr. Spak-Schreiner in May 2016, but also that Dr. Spak-Schreiner observed normal range of motion despite the reported discomfort. [R. 79, 469-71.] While complaints of various pain locations persisted, Dr. Spak-Schreiner observed normal range of motion and muscle tone on other occasions as well. [R. 79-80, 877.] Despite complaints of hand pain in April 2017, Plaintiff had normal range of motion, sensation, and strength. [R. 80, 896.] Providers made similar observations with regard to Plaintiff's knees. [R. 80, 995.] The Court agrees with Defendant that the ALJ did not ignore Plaintiff's reports of pain, or "cherry pick" evidence; rather, the ALJ acknowledged Plaintiff's reports of pain, but then looked at additional medical evidence to determine whether Plaintiff's functioning was truly limited by the reported pain, identifying numerous medical records to suggest it was not as limited as Plaintiff alleged. [R. 80.]

Additionally, the ALJ considered Plaintiff's course of treatment, noting it was generally conservative in nature. [R. 79-80]. The ALJ noted that when Plaintiff saw a rheumatologist with

10

continued complaints of pain due to fibromyalgia, the rheumatologist decided to change Plaintiff's

pain medications. [R. 80, 865.] When Plaintiff complained of back pain to Dr. Spak-Schreiner, the

doctor suggested Plaintiff regularly drink tonic water to help her back spasms and referred Plaintiff to

a chiropractor. [R. 80.] Later, a rheumatologist recommended physical therapy. [R. 80, 1108.] The ALJ

reasonably considered that these conservative treatment recommendations did not support Plaintiff's

assertions of completely debilitating symptoms. [R. 79-80.] Although Plaintiff asserts the ALJ should

not have considered these treatment recommendations because her condition remained "unrelenting"

in spite of the prescribed medication and "variety of attempted treatment modalities" [dkt. 11, p. 11],

the governing regulations and rulings instructed the ALJ to consider the type of treatment Plaintiff

received. 20 C.F.R. § 404.1529(c)(3)(iv), (v); SSR 16-3p, 2017 WL 5180304, *7-8; SSR 12-2p, 2012 WL

3104869, *5; *Vincent A. v. Berryhill*, 2019 WL 2085104, at *12 (N.D. Ill. May 13, 2019) ("[n]ot all

treatments support finding a claimant's pain allegations credible; to the contrary, an ALJ may discount

a claimant's allegations based on his reliance on 'routine and conservative' treatment."). Additionally,

the Court finds persuasive Defendant's argument that "it is hard to imagine…that providers would

continue to prescribe completely ineffective medications" [dkt. 20, p 7], particularly in the face of a

patient who has credible, persistent, unrelenting complaints of pain and inability to function. The same

holds true for the other differing, non-invasive treatment modalities recommended to treat Plaintiff's

fibromyalgia. Plaintiff has failed to demonstrate any error in the ALJ's consideration of Plaintiff's

treatment for fibromyalgia or its characterization as conservative.

Finally, the ALJ considered Plaintiff's regular activities, which is appropriate for the ALJ to do

under SSR 16-3p and SSR 12-2p. [R. 81-82.] The Court does not find the ALJ either overstated those

activities or equated them to full-time work. Instead, the ALJ reasonably considered whether Plaintiff's

activities belied greater abilities than she reported to the agency. *Id.* The ALJ detailed that despite her

allegations of severe limitations in moving about, sitting, and using her arms, Plaintiff could drive

11

wherever she needed to go. [R. 81, 210, 250.] This, the ALJ explained, demonstrated an ability to use her arms and hands to manipulate controls in the car, to sit for extended periods, and to bend and stoop to get in and out of the car. [R. 81.] The ALJ also considered Plaintiff's reported ability to prepare simple meals, do laundry with the assistance of a rolling hamper, and shop. [R. 81, 208-10.] The ALJ cited this evidence as further corroboration that Plaintiff's activities allowed her greater daily functionality than she reported to the Agency.

The Court does not find the ALJ's analysis of Plaintiff's subjective symptoms to be unsupported by the record or patently wrong. In fact, the ALJ's decision provided a fair sense of how she assessed Plaintiff's testimony and statements, as she cited many specific reasons from the record for her finding. *Burmester v. Berryhill*, 920 F.3d 507, 510-11 (7th Cir. 2019) ("ALJ's determination was not patently wrong because of the many specific reasons the ALJ cited from the record"). Thus, because the ALJ provided specific reasons of record for her credibility finding, which the Court does not find to be patently wrong, this finding is supported by substantial evidence and will not be overturned. The Court declines to remand on this basis.

**c.    RFC Finding**

Plaintiff also contends the ALJ erred by failing to conduct a more detailed assessment of Plaintiff's non-exertional functioning when setting forth the RFC in this case. [Dkt. 11, p. 13; Dkt. 23, p. 4.] Plaintiff does not make an argument that listing-level severity is met. [Dkt. 23, p. 4.]

The ALJ accommodated Plaintiff's mental limitations (*i.e.*, her non-exertional functioning) in the residual functional capacity finding. [R. 77.] In addition to exertional, postural, manipulative, and environmental limitations, the ALJ found that Plaintiff could understand, remember, and carry out simple routine tasks, was limited to making only simple work-related decisions, and could have no more than frequent contact with others. *Id.* In reaching that conclusion, the ALJ reviewed evidence of Plaintiff's mental functioning, including mental health treatment she received, and the assessment

by psychologist Shannon S. Doyle, Ph.D. [R. 81.] The ALJ also considered observations from Dr. Spak-Schreiner that Plaintiff's mood was normal, and notations in medical records that Plaintiff was stable on the antidepressant Effexor. [R. 81, 532 (normal mood and affect; mild depression stable on Effexor), 905 (normal mood, affect, and behavior), 1010 (normal mood, affect, behavior, judgment, and thought content), 1111 (same).]

After discussing the evidence, the ALJ provided a summary of how she reached her residual functional capacity determination. [R. 85.] The ALJ explained that Plaintiff experienced some mental health symptoms, including occasional panic attacks and social avoidance. *Id.* She then explained how she accommodated those limitations:

> Therefore, the undersigned has accommodated the claimant's stress limitations with unskilled work that requires her to understand, remember and carry out simple routine tasks as well as make simple work related decisions. This limitation was given to the claimant because of the increased likelihood of the claimant's negative intrusive thoughts manifesting themselves if she had to frequently make complex decisions as well as understand, remember and carryout complex tasks. In addition, due to the unpredictable nature of other people, negative intrusive thoughts would also likely occur if the claimant had to interact with supervisors, co-workers and the general public on a normal basis. Therefore, the undersigned has limited the claimant's interaction with others to a frequent basis in an eight-hour workday. In summary in regards to her non-exertional limitations, by confining the claimant to frequent interaction with others, simple decision-making and simple tasks, the claimant would likely experience less stressors that would exacerbate the symptoms of her anxiety and depressive disorders.

*Id.*

Although Plaintiff argues the RFC did not adequately address the moderate limitations in concentration, persistence, or pace identified during the "B criteria" discussion at Step Three of the ALJ's analysis, Plaintiff does not point to any evidence of greater limitations, which is insufficient for the Court to remand on this issue. *See, e.g., Jozefyk v. Berryhill*, 923 F.3d 492 (7th Cir. 2019) (affirming ALJ's opinion where plaintiff cited no evidence his alleged non-physical deficits kept him from performing simple, routine, and repetitive tasks; even if ALJ's RFC assessment were flawed, any error was harmless because Plaintiff did not identify more stringent work restrictions to accommodate

13

deficits). This is particularly true with respect to Plaintiff's alleged memory issues. Although Plaintiff

heralds two medical notes that appear to demonstrate her memory issues,[7] Plaintiff fails to hypothesize

as to what kinds of work restrictions might address these alleged limitations. *See Jozefyk*, 923 F.3d at

498. Similarly, Plaintiff points to her "distractibility," but fails to identify a work restriction which

might accommodate this. [Dkt. 11, p. 14.] Because it does not appear there are any evidence-based

restrictions that the ALJ could include in a revised RFC finding on remand, the Court declines to

remand on this issue. *Id.*

Finally, in an earlier section of her brief, Plaintiff asserted that the ALJ failed to consider her

fibromyalgia when explaining the RFC in this case, so the Court addresses that issue here as well. The

Court does not find this to be the case. The ALJ discussed treatment notes from Dr. Spak-Schreiner,

who treated Plaintiff for fibromyalgia and other complaints. [R. 79-81.] She discussed Plaintiff's

complaints to Dr. Spak-Schreiner, Dr. Spak-Schreiner's examination results, and Dr. Spak-Schreiner's

treatment recommendations. *Id.* The ALJ also noted Plaintiff's various reports to medical providers,

as well as those providers' observations about Plaintiff's abilities. [*See, e.g.*, R. 80 and 875-77 (Plaintiff

reported leg cramps and intermittent hand weakness, but treater observed a normal range of motion

and no swelling).] Again, similar to Plaintiff's alleged non-exertional limitations above, Plaintiff cites

no evidence that would have allowed the ALJ (or the Court) to conclude her fibromyalgia caused her

to experience greater limitations than those reflected in the RFC. The ALJ sufficiently considered

Plaintiff's fibromyalgia and appropriately addressed the symptoms and limitations she found credible

and supported by the medical evidence of record; the ALJ was not required to identify which

---

[7]    Plaintiff alleges two records in particular demonstrate her memory issues, but both of these records group memory issues in with other challenges (such as understanding detailed instructions or focusing), which makes it impossible to parse out the extent to which Plaintiff's treaters felt her memory was challenged from these two records. [Dkt. 11, p. 12 (citing R. 1162 (Plaintiff assessed at a level that precluded performance of "understand[ing] and remember[ing]" detailed instructions for more than 30% of an 8-hour workday) and R. 1123 (Plaintiff demonstrated increasing "difficulty in performing the tasks of the job because her memory, concentration and ability to focus were poor")).]

limitations were caused by Plaintiff's fibromyalgia, or use any other specific language when discussing the evidence.

The Court declines to remand this matter based on the ALJ's RFC finding.

### d.   Medical Opinions

#### i.   Opinion of Ms. Vicki Custer

The ALJ found that one of Plaintiff's mental health treaters, Ms. Vicki Custer, was not an acceptable medical source and assigned her opinions little weight. [R. 83.] Plaintiff asserts the ALJ erred by noting that Ms. Custer was not an acceptable medical source under the regulations, because Ms. Custer was a "licensed or certified psychologist," and therefore was an acceptable medical source. [Dkt. 1, p. 15.] However, Ms. Custer is not a licensed psychologist. She is a licensed clinical professional counselor, and the ALJ appropriately recognized her as such. [R. 83, 1123.] A licensed psychologist and a licensed clinical professional counselor are separate careers with distinct training and educational requirements. The ALJ did not err in identifying that Ms. Custer was not an acceptable medical source under the controlling regulations. 20 C.F.R. § 404.1502.

The ALJ could have stopped there, but she did not, instead highlighting additional concerns that led her to assign little weight to Ms. Custer's opinion. [R. 83.] The ALJ noted that Ms. Custer is a mental health professional, and therefore was not qualified to provide a medical opinion on Plaintiff's physical impairments. *Id.*; 20 C.F.R. § 404.1527(c)(3)(5). As a counselor, Ms. Custer had no identifiable expertise related to Plaintiff's physical health. She correctly considered that Ms. Custer's focus in her Clinical Notes Overview (these appear to be the progress notes to which Plaintiff refers) regarding Plaintiff's physical ailments rendered her opinion less persuasive. The ALJ properly considered that Ms. Custer offered opinions well beyond her area of expertise (including that Plaintiff was unable to work, which is an issue reserved to the Commissioner under 20 C.F.R. § 404.1527(d); *Denton v. Astrue*, 596 F.3d 419, 424 (7th Cir. 2010)), and reasonably concluded this rendered her opinions less

15

persuasive.

Plaintiff has failed to establish any error with regard to the ALJ's assessment of Ms. Custer's opinions; the Court declines to remand on this basis.

### ii.    Opinion of Dr. Sharon Spak-Schreiner

The ALJ explained that Dr. Spak-Schreiner's opinions were not entitled to controlling or great weight because they were not supported by and were inconsistent with other record evidence. [R. 83]; 20 C.F.R. § 404.1527(c)(2), (3), (4). *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004) (citing *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (ALJ may discount treating physician opinion if it is inconsistent with other evidence, as long as ALJ "minimally articulate[s] his reasons for crediting or rejecting evidence of disability"). The ALJ noted that Dr. Spak-Schreiner opined that Plaintiff could not sit or stand for more than 20 minutes at a time, could not lift or carry more than five pounds, and could rarely reach above her shoulders, down to waist level, or down to the floor. [R. 83, 1157-58.] Despite Dr. Spak-Schreiner's longitudinal notes demonstrating some complaints of continued pain in varied locations, even sometimes with medication [R. 471, 804, 807 824, 831, 833, 834, 859, 897] (as well as some notes demonstrating Plaintiff's noncompliance with medications and declination of medications because they allegedly failed to help her in the past [R. 790, 1010]), the ALJ explained that Dr. Spak-Schreiner's opinions were inconsistent with Plaintiff's daily activities and physical examinations. [R. 83.] As the ALJ had discussed earlier in her decision, Plaintiff prepared simple meals, did laundry with the use of a rolling hamper, and drove her car, among other activities. [R. 81.] While this discussion was not extensive, the ALJ adequately explained why she viewed these activities as inconsistent with the severe limitations Plaintiff alleged and about which Dr. Spak-Schreiner opined. [R. 81-82]; *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000), as amended (Dec. 13, 2000) ("ALJ must minimally articulate his reasons for crediting or rejecting evidence of disability"). The ALJ also noted that physical examinations demonstrated greater exertional, manipulative, and reaching abilities than

16

Dr. Spak-Schreiner opined. [R. 83.] The ALJ's earlier discussion provided examples of the ALJ's conclusion, including exams where Plaintiff had normal range of motion and strength despite complaints of tenderness or pain. [R. 80, 877, 896, 995.] Thus, the ALJ satisfied her obligation to minimally articulate how she assessed Dr. Spak-Schreiner's opinions. The Court declines to remand on this basis.

## IV.  Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment [dkt. 11] is DENIED and the Commissioner's motion for summary judgment [dkt. 19] is GRANTED.

Entered:  4/20/2020

_____
Susan E. Cox,
United States Magistrate Judge